UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

William Soukup

     v.                     Civil No. 09-cv-146-JL
                                 Opinion No. 2010 DNH 154

Robert Garvin
and the Town of Lisbon

## O R D E R

This case challenges an arrest on bail violation and disorderly conduct charges as lacking in probable cause and otherwise invalid because the suspect was taken into custody, rather than charged by summons.  Based on these asserted defects in his arrest--and despite the fact that it was supported by warrants--William Soukup has sued the arresting officer, Robert Garvin, and the Town of Lisbon, which employed him at the time, claiming violations of the Fourth Amendment, actionable under 42 U.S.C. § 1983, and state-law false imprisonment.  This court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction).

The defendants have moved for summary judgment, arguing that Garvin had probable cause for the arrest as a matter of law and, because it was based on valid warrants, it was unquestionably legal under either the Fourth Amendment or state law.  The defendants further argue that, even if the arrest was illegal,

that would not have been apparent to a reasonable officer in Garvin's position, so he is entitled to qualified immunity from the Fourth Amendment claim and official immunity from the state-law claim.  Finally, the defendants argue that, if Garvin did in fact violate Soukup's Fourth Amendment rights, that violation was unconnected to any municipal policy, custom, or practice, so the Town is entitled to summary judgment on the § 1983 claim anyway.

After oral argument, the court grants the defendants' motion for summary judgment.  As explained fully _infra_, Garvin had probable cause to arrest Soukup as a matter of law, despite his efforts here to attack the credibility of the complaining witness.  Even if probable cause were lacking, moreover, neither Garvin nor the Town would be liable on the § 1983 claim:  he would be entitled to qualified immunity because the existence of probable cause was at least arguable, and he was not carrying out any municipal policy or custom in arresting Soukup despite any lack of probable cause.  The state-law false imprisonment against Garvin fails because he had valid warrants for the arrest, and there is no evidence that he procured them through intentional or reckless material misstatements or omissions.  Finally, because Garvin had probable cause and a valid warrant, taking Soukup into custody, rather than issuing him a summons, was not unreasonable in violation of the Fourth Amendment.

## I.   **Applicable legal standard**

Summary judgment is appropriate where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  Under this rule, "[o]nce the moving party avers an absence of evidence to support the non-moving party's case, the non-moving party must offer 'definite, competent evidence to rebut the motion.'"  Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)).

Where, however, "the party moving for summary judgment bears the burden of proof on an issue, he cannot prevail unless the evidence that he provides on that issue is conclusive."  EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de P.R., 279 F.3d 49, 55 (1st Cir. 2002) (quotation marks omitted).  As discussed infra, this standard applies to Garvin's argument for summary judgment on the basis of qualified immunity from the Fourth Amendment claim, because he bears the burden of proof on that defense.

In ruling on a motion for summary judgment, the "court must scrutinize the record in the light most flattering to the party opposing the motion, indulging all reasonable inferences in that

3

party's favor."   <u>Mulvihill v. Top-Flite Golf Co.</u>, 335 F.3d 15, 19 (1st Cir. 2003).   The following facts are set forth accordingly.

## II.  <u>Background</u>

Garvin received a telephone call one day from Robert Brooks, Soukup's neighbor, reporting that Soukup had "just jumped out in front of [Brooks's] car."   At that time, Garvin was already acquainted with Soukup and Brooks, who lived near each other on the same road in town.   Garvin recalled that, some nine days earlier, the two men had been involved in an altercation and that, as a result, Soukup had been arrested on charges of assault and possession of a weapon (though Garvin had not personally participated in the investigation of that incident or the arrest).   Due to the arrest, Soukup remained subject to bail conditions, including, in relevant part, (1) to "have no contact with Robert Brooks or his [f]amily, by mail, telephone or otherwise," and (2) "to refrain from going within 50 yards of where [they] may be."

In response to Brooks's call, Garvin interviewed Soukup and his wife, Kathy, at their home, as well as Brooks, at his home. Garvin recalls that the Soukups told him they had witnessed Brooks "driving at a high rate of speed when [Soukup] observed this and threw his arms in the air yelling to Brooks to slow

down."  According to Garvin's police report, Soukup's wife said
that her husband was "in the road waving his arms" when Brooks
drove past, and Soukup said that he was on "the side of the road
with his dogs when he observed Brooks traveling" so he "waived
[*sic*] his arms in the air to slow down Brooks," and that "when
Brooks drove by, [Soukup] was right near [Brooks's] car."  The
Soukups now state in affidavits, however, that they did not tell
Garvin that Soukup was "in the road" or "waving his arms."[1]
Instead, Soukup says, he reported that he "was at the edge of the
road, on his lawn."  In his interview, Brooks said that he was
driving down his road when he saw Soukup "walking toward
[Brooks's] vehicle" with his "arms above his head waiving [*sic*]
them and swearing at Brooks."  Brooks also said that Soukup "was
so close to the vehicle his arms were near [the] windshield."

Both of the Soukups and Brooks later provided Garvin with
written statements.  The Soukups' statements repeated that Soukup
had yelled at Brooks to slow down as he was driving past their
house "at a high rate of speed," but did not say anything about
where Soukup had been standing at the time.  Brooks's statement

---

[1]The Soukups also state in their affidavits that Soukup
could not have been waving his arms because "he had one hand
holding [his] dog by the collar to keep it from darting out into
the road."  But the Soukups do not say whether they told this to
Garvin at the time.

related that, as he drove near Soukup's house, Soukup was "on his front lawn in the distance playing with his dogs" but then began "walking toward" Brooks's vehicle with a hand in the air "as if he wanted to talk."  Brooks stated that, while he attempted to avoid eye contact as he drove past, Soukup "continued to walk right into the road and was hollering and swearing and pointing," ultimately coming within "inches" of Brooks's vehicle.

Based on the information just surveyed, Garvin concluded that Soukup had engaged in criminal contempt by breaching his bail conditions, in violation of N.H. Rev. Stat. Ann. § 597:7-a, II, and disorderly conduct, in violation of N.H. Rev. Stat. Ann. § 644:2.  Though, as already mentioned, Garvin knew of the "history of conflict" between Soukup and Brooks, Garvin believed Brooks's account of the incident.  Garvin based that conclusion on Brooks's "general demeanor, and the fact that he had initially called the police to report the incident," as well as that he had "always been truthful" in "prior dealings" with Garvin.

Garvin applied for two warrants to arrest Soukup, one on the criminal contempt charge and the other on the disorderly conduct charge, swearing out a separate affidavit for each one.  The affidavit in support of the criminal contempt charge related Garvin's version of what the Soukups and Brooks said in their interviews.  While Garvin recalls that he swore out a "similar"

6

affidavit in support of the disorderly conduct charge, he has not been able to locate that affidavit and says that he is therefore "not 100% certain that it exists."  In any event, a justice of the peace issued both warrants.

Garvin then called Soukup to tell him about the warrants "and asked him to come down to the police station at a convenient time to process the arrest."  Soukup did so.  He was held at the station for several hours while his wife tried to raise money for bail and, when she could not do so within that time, transferred to the Grafton County jail.  After a few hours there, he posted bail and was released.  The charges were eventually dismissed.

Soukup then brought this action, alleging that Garvin had subjected him to an unreasonable seizure in violation of the Fourth Amendment, actionable under 42 U.S.C. § 1983, and false imprisonment under state law.  Soukup further alleged that the Town was liable on the § 1983 claim because it failed "to exercise reasonable care in supervising and training its police officers."  The Town subsequently moved for judgment on the pleadings on Soukup's § 1983 claim against it, arguing it failed to state a claim for relief, while Garvin moved for summary judgment on the claims against him based on qualified immunity.

In a written order, the court granted the motion for judgment on the pleadings, ruling that the complaint "contain[ed]

7

not a single assertion of fact" to support the § 1983 claim against the Town.  2009 DNH 120, 8.  But the court denied Garvin's motion for summary judgment, ruling that, while it "assert[ed] a colorable, and arguably meritorious qualified immunity defense," Soukup had "establishe[d] genuine issues of material fact."[2]  Id. at 8-9.  The court also observed, however, that "[d]iscovery may eliminate these disputes, allowing for summary judgment later in the litigation."  Id. at 9.

Soukup later moved to amend his complaint to reinstate the § 1983 claim against the Town, pleading a number of particular deficiencies in its policies or customs that he says were causes of the alleged Fourth Amendment violation by Garvin.  The amendment was allowed without objection.  The defendants then filed another motion for summary judgment.


## III. **Analysis**

## A.   **The alleged Fourth Amendment violations**

### 1.   **Lack of probable cause**

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses,

---

[2]In particular, Soukup argued that Garvin's affidavit in support of one of the arrest warrants "contained several false statements."

papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Probable cause exists "when, at the time of the arrest, the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" Holder v. Town of Sandown, 585 F.3d 500, 504 (1st Cir. 2009) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979) (ellipse by the court)).

When "the material facts--what the police knew at the moment of the arrest, the source of their knowledge, and the leads they pursued or eschewed--are not in dispute . . . , the existence vel non of probable cause ordinarily is amenable to summary judgment." Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 9 (1st Cir. 2004). That is the case here. There is no genuine dispute as to what Brooks told Garvin about Soukup's behavior, and those statements alone created probable cause to arrest him, both for criminal contempt and disorderly conduct.

Before explaining further, the court pauses to resolve two initial matters. First, Soukup suggests in a footnote to his brief that the disorderly conduct charge should be ignored in assessing the legality of his arrest due to the defendants'

9

inability to produce the affidavit submitted in support of the warrant for that offense.  But, to buttress that notion, Soukup does not provide any authority, or even any developed argument, and the controlling authority is to the contrary.

In Burke v. Town of Walpole, 405 F.3d 66 (1st Cir. 2005), the court of appeals rejected the plaintiff's argument that his arrest was invalid because, during the litigation of his § 1983 claim, the only supporting warrant produced by the defendants was "unsigned and unaccompanied by an affidavit or statement of facts in support of probable cause."  Id. at 77.  Thus, the plaintiff argued, "a reasonable jury could infer that no valid warrant existed."  Id.  The court of appeals disagreed, ruling that the defendants had "produced substantial, though imperfect, evidence that a valid arrest warrant issued upon a neutral magistrate's review of facts allegedly establishing probable cause," e.g., testimony by an officer who said he had prepared the application and notes that he identified as versions of it.  Id. at 78-79.

Likewise, Garvin has attested to drafting an affidavit in support of a warrant for the disorderly conduct charge and, while he has not produced any drafts, he has said that its substance was "similar" to that of the affidavit supporting the warrant for the criminal contempt charge, which has been produced in this case.  Furthermore, the evidence here that the affidavit

10

supporting the disorderly conduct warrant existed is even
stronger than the evidence in Burke in one critical respect:  the
defendants have produced a signed version of the warrant itself.
That strongly indicates that a supporting affidavit existed, both
circumstantially--because New Hampshire law, unlike the
Massachusetts law at issue in Burke, forbids the issuance of
warrants without such an oath or affirmation, N.H. Const. Pt. I,
Art. 19--and directly--because the justice of the peace recites
in the warrant that Garvin had "exhibited . . . his complaint
upon oath" against Soukup for disorderly conduct.

Beyond a strained characterization of Garvin's testimony in
this case,[3] Soukup has provided no contrary evidence.  So here,
as in Burke, the physical absence of a supporting affidavit from
the record does not prevent the court from relying on the
resulting warrant in gauging the legality of the arrest (though,
as discussed infra, Garvin had probable cause to arrest Soukup
for criminal contempt anyway, so his claim would fail even if the
court ignored the disorderly conduct charge as he suggests).

---

[3]Contrary to what Soukup argues, Garvin does not state that
he believed the affidavit supporting the disorderly conduct
warrant "existed, but cannot be sure" (emphasis added).  He
states a belief that he drafted the affidavit, but that because
"a search of the files has not been able to locate that
document,. . . . I am not 100% certain that it exists" (emphasis
added), i.e., at the present time.

Second, Soukup also claims that Garvin's application for the criminal contempt warrant contained reckless material misstatements or omissions.[4]  While the court rejects that assertion, see Part III.B, infra, it is irrelevant to Soukup's Fourth Amendment claim anyway.  No Fourth Amendment violation occurs, even in the case of a warrant procured by material misstatements or omissions, where probable cause supports the arrest, making it "independently valid without the need for a warrant."  United States v. Laurent, 607 F.3d 895, 903 (1st Cir. 2010).  There, as here, "the arrest warrant was unnecessary [so] invalidating it would not change the outcome; the arrest was amply supported by probable cause."  Id.

Under New Hampshire law, a person is guilty of disorderly conduct if, in relevant part, he "knowingly or purposely creates a condition which is hazardous to himself or another in a public place by any action which serves no legitimate purpose," N.H. Rev. Stat. Ann. § 644:2, I, "directs at another person in a public place obscene, derisive, or offensive words which are likely to provoke a violent reaction on the part of an ordinary person," id. § 644:2, II(b), or "[o]bstructs vehicular or

---

[4]Soukup conceded at oral argument that he had no evidence or reason to believe that any alleged misstatements or omissions in the warrant application were intentional.

12

pedestrian traffic on any public street," id. § 644:2, II(c).
Garvin had probable cause to believe that Soukup had done all of
those prohibited acts, based on Brooks's statements that Soukup
"continued to walk right into the road and was hollering and
swearing and pointing" at Brooks as he drove by, coming "so close
to the vehicle his arms were near [the] windshield."

These statements also furnished probable cause to arrest
Soukup for criminal contempt under § 597:7-a, II, which provides
that a person released on bail "who has violated a condition of
release is subject to . . . a prosecution for contempt of court."
The conditions of Soukup's bail, again, required him to "have no
contact with" Brooks and "to refrain from going within 50 yards
of where [he] may be."  Soukup did both, according to Brooks, by
swearing at him and coming close enough to his vehicle to touch
it as he drove past.[5]

---

[5]Soukup argues that it "should have been obvious to any
reasonable officer" that he "was unable to keep the 50-yard
distance between himself and Brooks."  That is only true,
however, if a reasonable officer would have to credit Soukup's
version of events that he was "at the edge of the road, on [his]
lawn" as Brooks approached.  Brooks stated that Soukup was "on
his front lawn in the distance" when he began walking toward
Brooks as he drove past, ultimately getting "within inches" of
the vehicle.  As discussed in detail infra, a reasonable officer
was entitled to believe Brooks rather than Soukup, and to
conclude that Soukup had gone within 50 yards of Brooks as
prohibited by the bail order.

Soukup concedes that "police officers can justifiably rely upon the credible complaint by a victim to support a finding of probable cause." Forest v. Pawtucket Police Dep't, 377 F.3d 52, 57 (1st Cir. 2004).  He nevertheless maintains that, here, a reasonable officer would have found Brooks's complaint to lack credibility.  His arguments on that score are unconvincing.

Soukup asserts that a reasonable officer would have doubted Brooks's story because "[r]ational men do not jump out in front of speeding cars . . . for any reason but to get themselves killed."  But, while Brooks said in his initial phone call to Garvin that Soukup "jumped out in front of [his] car," it is clear from his later statements that he meant that figuratively, i.e., Soukup went very near Brooks's car as he drove past.  In any event, it suffices to say that, as a matter of common experience, people do not always behave as "rational men" and even sometimes even do things that endanger their own welfare, so a report of a suspect acting that way would hardly seem incredible to a reasonable officer.  Probable cause, after all, is a "commonsense, nontechnical conception[] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Ornelas v. United States, 517 U.S. 690, 695 (1996) (quotation marks omitted).  Indeed, if police could credit reports of only

"rational" behavior by suspects in assessing probable cause, arrests for many types of crimes would become nearly impossible.

Soukup further argues that a reasonable officer would have disbelieved Brooks based on the "history of conflict" between him and Soukup.  But the court of appeals has squarely rejected the idea that "when an officer has knowledge of a 'bad relationship' between the person under suspicion and a witness to the alleged crime, that witness's credibility must be considered questionable and, consequently, the officer has a duty to investigate further before making an arrest."  Holder, 585 F.3d at 505.  And Garvin did investigate further:  he personally interviewed and received written statements from both Soukup and his wife.  They had the same motive to lie about the incident as Soukup attributes to Brooks, yet Soukup offers no colorable explanation as to why a reasonable officer would have believed them instead of Brooks.[6] As this court has observed, "[i]t would be nearly impossible for the police to carry out an arrest if the suspect's mere denials

---

[6]Garvin, in contrast, explains that he found Brooks reliable based on "the fact that he had initially called the police to report the incident," as well as that he had "always been truthful" in their prior dealings.  These factors tend to support the credibility of a witness in establishing probable cause, as the court of appeals has recognized.  See, e.g., United States v. Croto, 570 F.3d 11, 14 (1st Cir.) (witnesses "willingly provided the information" to police), cert. denied, 130 S. Ct. 518 (2009); United States v. Jordan, 999 F.2d 11, 14 (1st Cir. 1999) (witness had provided "reliable information" in the past).

were enough to extinguish probable cause."  <u>Holder v. Town of
Newton</u>, 2010 DNH 19, 12 (citing, <u>inter alia</u>, <u>Cox v. Hainey</u>, 391
F.3d 25, 32 n.2 (1st Cir. 2004) ("A reasonable police officer is
not required to credit a suspect's story.")), <u>appeal docketed</u>,
No. 10-1227 (1st Cir. Mar. 2, 2010).

In any event, the Soukups did not deny all culpable aspects
of Brooks's account--even according to what they now say they
told Garvin, which the court accepts as true in ruling on the
defendants' motion for summary judgment.  Though Soukup and his
wife deny reporting that he was in the road or waved his arms,
they do not deny reporting that he yelled at Brooks.  And Soukup
does not dispute that doing so amounted to "contact" with Brooks
as prohibited by the bail order.[7]  So, even if a reasonable
officer should have disregarded Brooks's account in favor of
Soukup's, Soukup's account alone furnished probable cause.

---

[7]As a result, the court need not--and does not--decide that
question.  Soukup, after all, bears the burden of proving he was
arrested without probable cause.  <u>See</u> <u>Tatro v. Kervin</u>, 41 F.3d 9,
15 (1st Cir. 1994).  Soukup does state in a footnote that "[o]ne
may argue that" his yelling at Brooks was not "contact," but his
sole support for that observation is a statement from his own
deposition that "[i]n my mind, for me to have contact with him,
he would have to hear me and understand me."  Even if this musing
carried any weight as to the meaning of the bail order, the
record establishes that Brooks did hear and understand Soukup,
because Brooks reported that he had heard Soukup swearing at him.
Furthermore, at oral argument, Soukup conceded that yelling at
Brooks "could be construed" as contact.

Soukup objects to that conclusion as well, arguing that his admitted conduct was not criminal by virtue of N.H. Rev. Stat. Ann. § 627:3, New Hampshire's statutory codification of the "competing harms" defense, and that "no police officer could reasonably have concluded otherwise--or at least, a jury is entitled to so find."  That is wrong for at least three reasons.

First, "the Supreme Court has flatly rejected the idea that the police have a standing obligation to investigate potential defenses before finding probable cause."[8] Acosta, 386 F.3d at 11 (citing Baker v. McCollan, 443 U.S. 137, 145-46 (1979)).  Second, the competing harms defense applies only to "[c]onduct which the actor believes to be necessary to avoid harm to himself or others," N.H. Rev. Stat. Ann. § 627:3, I, and is not available when "lawful alternatives exist which will cause less, if any, harm than the otherwise illegal conduct," New Hampshire v. L'Heureux, 150 N.H. 822, 827 (2004).  So, if Brooks's speeding did indeed put Soukup in fear for his "life and limb," then he

---

[8]At oral argument, Soukup maintained that this rule did not apply where, as here, the police do investigate a potential affirmative defense by interviewing the suspect.  But, just as a reasonable officer normally has no duty to investigate defenses, he also has no duty to resolve disputes over their application in the suspect's favor.  See Holder, 585 F.3d at 505.  This rule has particular force where, as here, the suspect does not invoke the defense or even provide any factual basis for it during the investigation.

could have protected those interests, and stayed within his bail conditions, by simply backing himself away from the side of the road as he saw Brooks approaching.

Third, if it was in fact "necessary" for Soukup to yell at Brooks, there is nothing in Soukup's affidavit to suggest that he told Garvin that during the investigation.  To the contrary, Soukup now says he reported being "at the edge of the road, on [his] lawn," when Brooks passed, which calls into serious question Soukup's claimed need to yell at Brooks "to avoid harm to himself or others" from the speeding vehicle.[9]

Although Soukup's arguments presume otherwise, "'probable cause' is just that--probable--and does not require proof beyond a reasonable doubt," United States v. Morales-Aldahondo, 524 F.3d 115, 119 (1st Cir. 2008), let alone the wholesale rejection of a witness's story simply because he had past conflicts with the suspect, or the anticipation of a farfetched affirmative defense. In light of these principles, set forth in the controlling caselaw cited above, any rational factfinder would have to

---

[9]At oral argument, Soukup maintained that yelling was necessary to protect his dog from Brooks's speeding car.  It is unclear, though, whether protecting an animal--as opposed to a person--from harm would trigger the competing harms defense. Regardless, Soukup now says that he was holding his dog by the collar to prevent it from bolting into the road as Brooks passed, so yelling at Brooks in violation of the bail order was not "necessary" to protect the dog from harm either.

conclude that the facts known to Garvin at the time of the arrest established probable cause for at least one of the offenses, if not both.  See Holder, 585 F.3d 505-506; Acosta, 386 F.3d at 10-12; Forest, 377 F.3d at 57.

### 2.   Qualified immunity

Garvin argues that, even if the arrest lacked probable cause, he cannot be held personally liable for it under § 1983 by virtue of qualified immunity.[10]  The Supreme Court has held that an officer "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  In other words, qualified immunity protects an officer's decision to obtain an arrest warrant "'so long as the presence of probable cause is at least arguable.'"  Abreu-Guzman v. Ford, 241 F.3d 69,

---

[10]While Soukup also brings this claim against the Town of Lisbon, which cannot invoke qualified immunity, see Owen v. City of Independence, 445 U.S. 622 (1980), he does not explain the causal nexus between his alleged arrest without probable cause and any of the assertedly deficient municipal policies or customs set forth in his amended complaint.  There is none, as the defendants point out.  So any claim seeking to impose liability against the Town for Garvin's allegedly arresting Soukup without probable cause cannot succeed.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

73 (1st Cir. 2001) (quoting <u>Prokey v. Watkins</u>, 942 F.2d 67, 72
(1st Cir. 1991)).

That was manifestly the case here.  Again, even aside from
Brooks's account, which a reasonable officer was entitled to
credit, Soukup concedes that the bail order "could be construed"
to prohibit his admitted yelling at Brooks, and it was hardly
unreasonable for Garvin to fail to anticipate a competing harms
defense which is thin at best and was not even invoked by Soukup
himself during the investigation.  Even if probable cause for the
arrest was lacking, Garvin is entitled to summary judgment on the
Fourth Amendment claim.[11]


### 3.   The custodial nature of the arrest

Soukup also argues that, even if there were probable cause
for his arrest, it still violated the Fourth Amendment because he
was taken into custody on the charges, rather than ordered to
appear by way of a summons.  This is so, he maintains, because
"[t]here simply was no good reason to subject [him] to an arrest"
for his alleged misdemeanors that occurred outside of the

---

[11]Soukup concedes that Garvin is entitled to qualified
immunity from the claim that he violated the Fourth Amendment by
arresting him rather than issuing him a summons, given the lack
of "clear precedent"--or, more accurately, any precedent--to
support that theory.  <u>See</u> Part III.A.3, <u>infra</u>.

arresting officer's presence--despite the fact that the arrests were supported by valid warrants.  This argument betrays a grave misunderstanding of the Fourth Amendment.

Soukup provides no authority whatsoever for the radical proposition that an arrest can violate the Fourth Amendment even though it is supported by a valid warrant, and this court is not aware of any, from any court, anywhere (aside from cases where excessive force was used to carry out the arrest, see Graham v. Connor, 490 U.S. 386, 396-97 (1989), but there is no allegation to that effect here).  That is hardly surprising, because "[t]he bulwark of Fourth Amendment protection, of course, is the Warrant Clause, requiring that . . . police obtain a warrant from a neutral and disinterested magistrate."  Franks v. Delaware, 438 U.S. 154, 165 (1978).  When that happens, and the police proceed to execute the warrant, that is the Fourth Amendment in action. It is not a Fourth Amendment violation.  See United States v. Ventresca, 380 U.S. 102, 112 (1965) (ruling that arresting officers "did what the Constitution requires.  They obtained a warrant from a judicial officer 'upon probable cause, supported by Oath or affirmation.'" (quoting U.S. Const. amend. IV)).

Garvin's proposed rule--that the Fourth Amendment prohibits the use of warrants to arrest a suspected misdemeanant whose alleged crimes did not occur in the presence of an officer, at

least without some "good reason" for taking the suspect into custody--would essentially turn this regime upside down.  It would render magistrates powerless to command valid arrests in certain cases, even if probable cause were indisputable, while authorizing officers to make warrantless arrests based on their own probable cause assessments so long as the supporting events unfolded before their eyes.  And Soukup is seriously mistaken that the Supreme Court supplied the "logic" for such an approach in Atwater v. City of Lago Vista, 532 U.S. 318 (2001).

There, the Court held that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  Id. at 354.  The Court noted, however, both that there was no need there to "speculate whether the Fourth Amendment entails an 'in the presence' requirement for purposes of misdemeanor arrests," id. at 341 n.11, and that the plaintiff conceded the arrest would have been constitutional if supported by a warrant, id. at 346 n.15.  Soukup does not explain how these limitations on the holding, i.e., the Fourth Amendment authorizes arrests for all misdemeanors committed in the officer's presence, and without a warrant, translate into a rule that the Fourth Amendment prohibits arrests for some misdemeanors committed out of the

officer's presence, but with a warrant.  The syllogism is simply
illogical.

This is to say nothing of the fact that, as an example of a
"discretionary judgment" by police that provides "no basis for
legal action challenging" it, the Atwater Court specifically
mentioned "choosing between the discretionary leniency of a
summons in place of a clearly lawful arrest," i.e., one supported
by probable cause.  Id. at 350.  The Court very likely would have
selected a different example of inactionable police conduct had
it meant to imply, as Soukup believes, that electing to proceed
by arrest rather than summons can subject police to liability.
Indeed, the very holding of Atwater is that it cannot, at least
where the misdemeanor occurs in the officer's presence.

Furthermore, as Soukup himself emphasizes, Atwater observed
that "a responsible Fourth Amendment balance is not well served
by standards requiring sensitive, case-by-case determinations of
government need, lest every discretionary judgment in the field
be converted into an occasion for constitutional review."  Id. at
347.  But Soukup demands just that kind of sensitive, case-by-
case determination here.  His arrest was unreasonable, he
complains, because he "was not a flight risk" and his crime was
"not one of violence" nor did it create a "risk of renewed
violence between he and Brooks," as shown by the fact that the

23

arrest was not carried out right away.  But those are more or less the same facts the Atwater Court refused to use as an occasion for limiting an officer's constitutional authority to arrest for a misdemeanor committed in his presence.  Id. at 346.

Nevertheless, Soukup maintains, that rationale does not apply in cases of arrest by warrant, which do not necessitate the same judgments "on the spur (and in the heat of) the moment" as warrantless arrests and therefore do not require "standards sufficiently clear and simple to be applied with a fair prospect of judicial second-guessing months and years after an arrest." Id. at 347.  Both Soukup's premise and his conclusion are wrong.

First, police are often called upon to decide whether to seek an arrest warrant "on the spur (and in the heat of) the moment"--hence their authority to do so by phone, fax, or electronic transmission, see N.H. Rev. Stat. Ann. § 490:27-a. Second, as Atwater makes clear, the need for "easily administrable rules" under the Fourth Amendment is not limited to cases requiring quick decisions by the police.  The Court specifically noted, in fact, that "Fourth Amendment rules "'ought to be expressed in terms that are readily applicable in the context of the law enforcement activities in which they are necessarily engaged.'"  532 U.S. at 347 (quoting New York v. Belton, 453 U.S. 454, 458 (1981)) (further quotation marks and

footnote omitted).  "Law enforcement activities," of course,
include seeking arrest warrants as well as making warrantless
arrests, and the fact the former typically provides more
opportunity for reflection than the latter does not itself
justify imposing a set of "'ifs, ands, and buts' rules, generally
thought inappropriate in working out Fourth Amendment
protection."  Id. (quoting Belton, 453 U.S. at 458).

In disregard of this principle, Soukup proposes a rule that,
even if an officer has probable cause to believe a suspect has
committed an offense, he may not arrest pursuant to a warrant, if
the offense is a misdemeanor, and if the suspect poses no risk of
flight or violence.  It was the Atwater Court's concern for the
difficulties inherent in making those kinds of judgment calls
based solely on a pre-arrest investigation, though, that supplied
one of the main rationales for its holding.  Id. at 348-50.

Moreover, police have enough to do in investigating and
analyzing whether there is probable cause without also having to
worry about whether they should proceed by warrant or summons
(and over personal § 1983 liability if they choose wrong).
Imposing that additional burden comes with very little
corresponding benefit, as the Atwater Court concluded in
rejecting a rule, similar to the one Soukup proposes here, that
would require the police to proceed by summons in particular

circumstances.  Id. at 351-54.  After all, suspects taken into custody ordinarily receive a bail hearing the next morning, at the latest, see Holder, 2010 DNH 019, 29-30, at which factors like risk of flight and dangerousness are considered by a judicial officer, see N.H. Rev. Stat. Ann. § 597:2, II-III. Demanding that officers weigh those factors before even making the arrest, then, offers little additional protection against unjustified detentions--just as, the Atwater Court reasoned, it offered little additional protection against arrests without probable cause, since the Constitution already guarantees "anyone arrested for a crime without formal process" to a probable cause hearing before a magistrate within 48 hours.  532 U.S. at 352.

The only justification Soukup offers for his proposed rule, in fact, is to spare a suspect from the "gratuitous humiliation" and "pointless indignity" of custodial arrest when charging him by summons would have been equally effective in serving the law enforcement interests at issue.  Even assuming that the second part of that statement is correct, though (among other benefits, an arrest followed by the imposition of bail conditions creates an incentive for a defendant to appear at trial that a summons does not), that was precisely the justification the Atwater Court rejected in refusing to prohibit warrantless arrests for misdemeanors committed in the officer's presence.  Id. at 346-47.

26

It borders on sophistry to argue that the same justification supports a ban on misdemeanor arrests by warrant, simply because the offenses occurred outside of the officer's presence.

Indeed, while Atwater declined to decide whether the "presence requirement" was constitutionally compelled, other courts have not hesitated to hold that it is not.  In a decision preceding Atwater, in fact, the court of appeals observed that "neither the Supreme Court nor this circuit has ever held that the Fourth Amendment prohibits warrantless arrests for misdemeanors not committed in the presence of arresting officers," and cited approvingly to "cases from sister circuits addressing this very issue [that] have arrived at the opposite conclusion."  Vargas-Badillo v. Diaz-Torres, 114 F.3d 3, 6 (1st Cir. 1997) (citing Pyles v. Raisor, 60 F.3d 1211, 1215 (6th Cir. 1995), Barry v. Fowler, 902 F.2d 770, 772 (9th Cir. 1990), and Street v. Surdyka, 492 F.2d 368, 371-72 (4th Cir. 1974)).

The fact that the Court has since declined to decide whether the Fourth Amendment imposes a "presence" requirement for misdemeanor arrests is no reason to believe it would answer that question in the affirmative.  See United States v. McNeill, 484 F.3d 301, 311 (4th Cir. 2007) ("Several other circuits have held that the Fourth Amendment contains no 'in the presence' requirement, and none have reversed their position in the wake of

27

Atwater." (citing Woods v. City of Chi., 234 F.3d 979, 992-95
(7th Cir. 2000), Pyles, 60 F.3d at 1215, Fields v. City of S.
Houston, 922 F.2d 1183, 1189 (5th Cir. 1991), and Barry, 902 F.2d
at 772)).  Under these cases, then, even if Garvin did not have
valid warrants for Soukup's arrest on the misdemeanor charges--
and the warrants were valid, see Part III.B, infra--the fact that
the alleged criminal conduct occurred outside Garvin's presence
would still not invalidate the arrest under the Fourth Amendment.
Soukup cites no authority to the contrary.

Finally, it is also worth noting that Soukup was not
arrested for just any misdemeanor, but for criminal contempt for
violating the conditions of his bail.  New Hampshire law
specifically contemplates that a "court may issue a warrant for
the arrest of a person charged with violating a condition of
release," N.H. Rev. Stat. Ann. § 597:7-a, III, and federal law
contains a nearly identical provision as part of the Bail Reform
Act, see 18 U.S.C. § 3148(b).

If Soukup is right that his arrest for violating his bail
order was nevertheless unreasonable under the Fourth Amendment,
that means these statutes (and, one would expect, the similar
laws of a number of other states) are unconstitutional, at least
as applied to certain bail violation arrests, but that no court
has yet to so hold.  Atwater relied on the similar prevalence of

laws authorizing warrantless arrests for misdemeanors committed
in the officer's presence, and the absence of decisions
invalidating them, in holding that they were not prohibited by
the Fourth Amendment.  532 U.S. at 344-45.  The same reasoning
applies here.  Soukup's custodial arrest on the criminal contempt
charge did not violate the Fourth Amendment.[12]


B.    **The state-law false imprisonment claim**

Soukup also claims that his arrest amounted to false
imprisonment at common law.[13]  To prevail on this claim, Soukup
must show, among other things, that he was confined by the
defendants "without legal authority."  <u>MacKenzie v. Linehan</u>, 158

---

[12]The court has assumed for purposes of this discussion that
Garvin arrested Soukup in accordance with the alleged municipal
custom to carry out custodial arrests for all misdemeanors,
establishing the Town's liability for the claimed constitutional
violation.  <u>See</u> note 10, <u>supra</u>.

[13]In most cases, the dismissal of all federal claims before
trial "will point toward declining to exercise [supplemental]
jurisdiction over the remaining state-law claims."  <u>Carnegie-
Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988).  But there
is no "mandatory rule" requiring dismissal; courts must "consider
and weigh in each case, and at every stage of the litigation, the
values of judicial economy, convenience, fairness, and comity in
order to decide whether to exercise jurisdiction."  <u>Id.</u>  In this
case, the close proximity to trial and the heavy overlap between
Soukup's federal and state-law claims both point in favor of
exercising jurisdiction.  <u>See</u>, <u>e.g.</u>, <u>Nowak v. Ironworkers Local 6
Pension Fund</u>, 81 F.3d 1182, 1192 (2d Cir. 1996).  This court
therefore resolves Soukup's state-law claim as well.

N.H. 476, 482 (2009).  Garvin had legal authority to detain
Soukup in the form of valid warrants to arrest him.  He therefore
cannot maintain a false imprisonment claim.  See Welch v.
Bergeron, 115 N.H. 179, 181 (1975).

Soukup argues that the warrants were defective because
Garvin's supporting affidavits suffered from materially false
statements included, and omissions excluded, "knowingly and
intentionally, or with reckless disregard for the truth."
Franks, 438 U.S. at 155-56.  Assuming, without deciding, that a
warrant procured through misstatements or omissions does not
confer the "legal authority" fatal to a false imprisonment claim
under New Hampshire law, but see Hickox v. J.B. Morin Agency,
Inc., 110 N.H. 438, 443 (1970) (unless a complaint for an arrest
warrant "appear[s] on the face of it to be an absolute nullity,
it cannot be called in question collaterally" through a false
imprisonment claim) (quotation marks, parentheses, and bracketing
omitted), there was no Franks violation here.  The alleged
misstatements and omissions, even if reckless (again, Soukup
concedes that he has no basis to say they were intentional), were
not material to the showing of probable cause that supported the
warrant to arrest Soukup for violating his bail conditions.

For a court "to determine materiality," it must "excise the
offending inaccuracies and insert the facts recklessly omitted,

and then determine whether or not the corrected warrant application would establish probable cause." Burke, 405 F.3d at 82 (quotation marks and ellipse omitted).[14]  Here, Soukup argues that the application inaccurately stated that he was waving his arms and walking toward Brooks's vehicle, when in fact, as he now alleges, he was simply standing at the edge of the road as Brooks sped past.  Soukup further argues that the application recklessly omitted the fact that Brooks had recently been arrested due to a prior confrontation with Soukup.

But the application did contain a statement from Soukup's wife that he had yelled at Brooks, which, as discussed supra, was itself enough to establish probable cause to arrest Soukup for violating his bail conditions (since he has more or less acknowledged here that the yelling amounted to contact within the meaning of the bail order).  Soukup has never questioned the accuracy of that statement.  Furthermore, since its source was Soukup's wife, rather than Brooks, any omitted information tending to impugn Brooks's credibility, i.e., his arrest due to a prior altercation with Soukup, was immaterial to this aspect of the probable cause analysis.  So, even when the complained-of

---

[14]As Burke makes clear, there is no merit to Soukup's suggestion at oral argument that a court hearing a § 1983 claim raising a Franks violation cannot assess the materiality of the alleged omissions as a matter of law.

inaccuracies and omissions in the warrant application are corrected, it still demonstrates probable cause for Soukup's arrest.  See, e.g., United States v. Ranney, 298 F.3d 74, 78-79 (1st Cir. 2002).  It follows that the warrant was valid and therefore conveyed the necessary "legal authority" for Brooks to arrest Soukup.  The defendants are entitled to summary judgment on Soukup's state-law false imprisonment claim.[15]

## III. **Conclusion**

For the foregoing reasons, the defendants' motion for summary judgment[16] is GRANTED.  The clerk shall enter judgment accordingly and close the case.


**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  August 25, 2010

cc:  Frank P. Spinella, Jr., Esq.
     Andrew B. Livernois, Esq.

_____

[15]The court therefore need not reach their official and derivative immunity arguments.

[16]Document no. 19.

32